**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KAREN POTTS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> WEIGHT WATCHERS INTERNATIONAL, INC., MINDY GROSSMAN, NICHOLAS P. HOTCHKIN and ARTAL GROUP S.A., <br><br> Defendants. | Case No. 1:19-cv-02005-WHP |
| JOHN JUBELT, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> WEIGHT WATCHERS INTERNATIONAL, INC., MINDY GROSSMAN, NICHOLAS P. HOTCHKIN and ARTAL GROUP S.A., <br><br> Defendants. | Case No. 1:19-cv-02528-WHP |

**MEMORANDUM OF LAW IN SUPPORT OF SERGE SIENA'S MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

Serge Siena ("Movant") respectfully submits this memorandum of law in support of his motion pursuant to the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4, *et seq*. (the "PSLRA") for an Order: (1) consolidating the above-captioned related actions; (2) appointing Movant as Lead Plaintiff under 15 U.S.C. §78u-4(a)(3)(B); (3) approving Movant's selection of Glancy Prongay & Murray LLP ("GPM") as Lead Counsel pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v); and (4) granting such other relief as the Court may deem to be just and proper (the "Motion").

## I.    FACTUAL BACKGROUND[1]

This is a putative federal securities class action brought on behalf of a class consisting of all persons and entities, other than defendants and their affiliates, who purchased or otherwise acquired the securities of Weight Watchers International, Inc. ("Weight Watchers" or the "Company") between May 4, 2018 and February 26, 2019, inclusive. The lawsuit seeks to pursue remedies against Weight Watchers and certain of its officers and directors for violations of federal securities laws.

Weight Watchers earns revenues from subscriptions for the Company's digital products and by conducting workshops, for which it charges a fee, predominantly through commitment plans, prepayment plans, and "pay-as-you-go" arrangements (collectively, "subscriptions"). Weight Watchers also earns revenues by selling consumer products (including publications) in its workshops, online and to its franchisees, collecting commissions from franchisees, collecting royalties related to licensing agreements, selling magazine subscriptions, publishing, selling advertising space on its websites and in copies of its publications and By Mail product sales.

On November 1, 2018, after the close of trading, Weight Watchers issued a press release announcing its 3Q18 financial results. Weight Watchers reported that it had lost 300,000 subscribers in the quarter, bringing its subscriber count down to 4.2 million (from 4.6 million at the end of the 1Q18), causing the Company's reported net revenues of $366 million to significantly underperform the $379 million Defendants had led the market to expect. The Company also reported an adjusted net income of just $0.94 per share, while investors had been led to expect adjusted earnings of $0.99 per share on revenues of $365.8 million based on defendants' bullish Class Period statements.

On this news, the price of Weight Watchers common stock fell $20.36, nearly 30%, to close at $48.13 per share on November 2, 2018, on unusually high trading volume.

---

[1] Factual background section adapted from the allegations in the complaints filed in the above-captioned actions.

Throughout the Class Period, Defendants made materially false and misleading statements about the Company's business, operations, and prospects. Specifically, Defendants madef alse and/or misleading statements and/or failed to disclose:  (a) that Weight Watchers was experiencing diminished subscriber demand attributable due to the onslaught of new competing smartphone fitness apps, meal-delivery services, and other tech advances was driving down Weight Watchers' new subscriber growth and its subscriber retention rates; (b) that diminished subscriber growth, when coupled with the much larger number of fourth quarter subscription lapses that Weight Watchers typically experiences, made it highly unlikely that the Company would retain four million subscribers by the end of 2018; (c) that Weight Watchers was not on track to grow its subscriber count to five million or to drive annual revenues to more than $2 billion by the end-of-2020; (d) that a decreased subscriber count would result in decreased revenues and profits; and (e) as a result, Defendants' statements about Weight Watchers' business metrics and financial prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

Finally, on February 26, 2019, after the close of trading, Weight Watchers issued a press release and conducted a conference call with investors and stock analysts revealing the Company's actual 4Q18 and FY18 results and financial prospects. The 4Q18 subscriber count had again declined down to 3.9 million subscribers. Defendants finally conceded that enrollment would continue declining during FY19, with Defendant Grossman revealing that while January is typically the best time for health-focused brands and when 40% of new subscribers typically join due to New Year's resolutions, January 2019 had been a "hard month" for Weight Watchers. The Company said that it was now only targeting revenues of $1.4 billion during FY19, nowhere near the $2 billion in annual revenues it had been projecting to achieve by the end-of-2020 and well below the nearly $1.7 billion it had led the market to expect for FY19. Weight Watchers also disclosed that it was now only targeting EPS of $1.25 to $1.50 per share for FY19, far lower than the EPS of $3.36 defendants had led the market to believe even following its prior misses in August and November 2018.

On this news, the price of Weight Watchers common stock fell $10.20, or nearly 35%, to close at $19.37 per share on February 27, 2019, on unusually high trading volume.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Movant and other Class members have suffered significant losses and damages.

## II.   PROCEDURAL HISTORY

Plaintiff Karen Potts ("Potts") commenced the above-captioned action against Weight Watchers on March 4, 2019 in the United States District Court, Southern District of New York, *Potts v. Weight Watchers International, Inc. et al*, Case No. 1:19-cv-2005-WHP. That same day, counsel for Plaintiff Potts published a notice on *Business Wire*, announcing that a securities class action had been initiated against Defendants herein.

Subsequent to the filing of the *Potts* complaint, one other action was commenced in this District, alleging similar claims against the same defendants as the *Potts* complaint: *Jubelt v. Weight Watchers International, Inc. et al,* Case No. 1:19-cv-02528-WHP (S.D.N.Y. March 21, 2019).  (*Potts* and *Jubelt* are collectively referred to as the "Related Actions").

## III.   ARGUMENT

### A.   The Related Actions Should Be Consolidated

Pursuant to Federal Rule of Civil Procedure Rule 42(a), consolidation is proper when actions involve common questions of law and fact.  *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).

Each of the Related Actions presents similar legal and factual issues, as they all involve the same subject matter and allege the same causes of action.  Each case alleges violations of the Exchange Act, each presents the same or similar theories for recovery and each is based on the same allegedly wrongful course of conduct.  Because the Related Actions arise from the same facts and circumstances, and assert the same theories of liability, consolidation will conserve scarce judicial resources and is appropriate. *See Pipefitters Local No. 636 Defined Ben. Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 192 (S.D.N.Y. 2011) (Consolidation is appropriate "if the

cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation.").

### B.    Movant Should be Appointed Lead Plaintiff

The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. §§ 77z–1(a)(3)(B) and 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff"— *i.e*., the plaintiff most capable of adequately representing the interests of the Class—is the class member that:

(aa) has either filed the complaint or made a motion in response to a notice . . . ;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).

The presumption in favor of appointing a movant as lead plaintiff may be rebutted only upon proof "by a purported member of the plaintiff class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interest of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

As set forth below, Movant satisfies all of the PSLRA criteria and has complied with all of the PSLRA's requirements to be appointed lead plaintiff.  Movant has, to the best of his knowledge, the largest financial interest in this litigation, and meets the relevant requirements of

Federal Rule of Civil Procedure 23.  In addition, Movant is not aware of any unique defenses Defendants could raise against him that would render him inadequate to represent the Class. Accordingly, Movant respectfully submits that he should be appointed lead plaintiff.  *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008).

### 1.    Movant Filed a Timely Motion

On March 4, 2019 pursuant to 15 U.S.C. 78u-4(a)(3)(A)(i), counsel for Plaintiff Potts published a notice of the pendency of Plaintiff's case on *Business Wire—*a widely circulated national business-oriented wire service—announcing that a securities class action had been filed against Defendants herein and advising purchasers of Weight Watchers securities that they had the right to file a motion to be appointed as lead plaintiff.  *See* Declaration of Lesley F. Portnoy ("Portnoy Decl.") at Exhibit ("Ex.") A; *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-63 (D. Mass. 1996) (publication on a national wire service satisfies the PSLRA notice requirement).

Movant timely filed this motion within the 60-day period following publication of the March 4, 2019 PSLRA notice, and submits herewith his sworn certification and attests that he is willing to serve as a representative of the Class and is willing to provide testimony at deposition and trial, if necessary.  *See* Portnoy Decl., Ex. B. By making a timely motion in response to a PSLRA notice, Movant satisfies the first PSLRA requirement to be appointed lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(aa).

### 2.    Movant Has the Largest Financial Interest

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii).  At the time of this filing, Movant believes that he has the largest financial interest among Class members who filed timely applications for appointment as lead plaintiff and are presumed to be the "most adequate plaintiff."

Movant purchased Weight Watchers securities during the Class Period at prices alleged to be artificially inflated by Defendants' misstatements and omissions and, as a result, suffered

financial losses of approximately $216,757.00. *See* Portnoy Decl., Ex. C. To the best of his knowledge, Movant is not aware of any other Class member that has filed a motion for appointment as lead plaintiff who is claiming a larger financial loss. Movant believes he has the "largest financial interest in the relief sought by the Class." Thus, Movant satisfies the second PSLRA requirement—the largest financial interest—to be appointed as lead plaintiff for the Class. *See Varghese*, 589 F. Supp. 2d at 396.

### 3. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff candidate otherwise satisfies the requirements of Rule 23, "typicality and adequacy of representation are the only provisions [of Rule 23] relevant to the determination." *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Svcs. Group, Inc*. 269 F.R.D. 291, 296 (S.D.N.Y. 2010). At the lead plaintiff stage of the litigation, a movant need only make a preliminary showing that they satisfy Rule 23's typicality and adequacy requirements. *Id*. at 296-97 (*citing In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005); *Kuriakose v. Federal Home Loan Mortg. Co.*, No. 1:08–cv–7281 (JFK), 2008 WL 4974839, at *5 (S.D.N.Y. Nov. 24, 2008).

### a.      Movant's Claims Are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims, and plaintiff's claims are based on the same legal theory.  *See Kuriakose*, 2008 WL 4974839, at *4. Rule 23 does not require the lead plaintiff to be identically situated with all class members.  *Id.*

Movant's claims are typical of the claims asserted by the proposed Class. Like all members of the Class, Movant alleges that Defendants' material misstatements and omissions concerning Weight Watchers' business, operations, and financial prospects violated the federal securities laws.  Movant, like all of the members of the Class, purchased Weight Watchers' securities in reliance on Defendants' alleged misstatements and omissions and was damaged thereby. Accordingly, Movant's interests and claims are "typical" of the interests and claims of the Class.

### b.      Movant Is an Adequate Representative

"The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *City of Monroe*, 269 F.R.D. at 297.

Movant has demonstrated his adequacy by retaining competent and experienced counsel with the resources and expertise to efficiently prosecute this action, and his financial losses ensure that they have sufficient incentive to provide vigorous advocacy.  *See* Portnoy Decl., Ex. C.  Movant is not aware of any conflict between his claims and those asserted on behalf of the Class.

### C.      The Court Should Approve Lead Plaintiff's Choice of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp.*, 264 F.3d at 274.  Thus, the Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  Here, Movant has

retained Glancy Prongay & Murray LLP as lead counsel to pursue this litigation on his behalf and will retain the firm as the Class's lead counsel in the event he is appointed lead plaintiff. Glancy Prongay & Murray LLP possesses extensive experience in securities litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, as reflected by the firm's résumé attached to the Portnoy Declaration as Exhibit D. Thus, the Court may be assured that, by granting Movant's Motion, the Class will receive the highest caliber of legal representation.

## IV.    CONCLUSION

For the foregoing reasons, Movant respectfully request that the Court grant his Motion and enter an Order (1) consolidating the related actions; (2) appointing Movant as lead plaintiff; (3) approving Movant's selection of Glancy Prongay & Murray LLP as lead counsel for the class; and (4) granting such other relief as the Court may deem just and proper.

Respectfully submitted,

DATED: May 3, 2019                      **GLANCY PRONGAY & MURRAY LLP**


By:   *s/ Lesley F. Portnoy*
Lesley F. Portnoy (LP-1941)
230 Park Ave., Suite 530
New York, New York 10168
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
lportnoy@glancylaw.com

-and-

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*[Proposed]Lead Counsel for Movant and the Class*

9

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On May 3, 2019, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 3, 2019, at Los Angeles, California.


*s/ Lesley F. Portnoy*
Lesley F. Portnoy