# Simpson Thacher & Bartlett LLP

Direct Dial Number
+1-212-455-2696

E-mail Address
lneuner@stblaw.com

BY ECF AND BY U.S. MAIL                    August 28, 2019

Re:    *In re Weight Watchers International, Inc. Securities Litigation*,
No. 1:19-cv-02005-WHP

The Honorable William H. Pauley III
Southern District of New York
500 Pearl Street, Room 1920
New York, New York 10007

Dear Judge Pauley:

We represent all Defendants in the above-captioned action and respectfully submit this pre-motion conference letter on Defendants' proposed motion to dismiss.

Plaintiffs allege violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "1933 Act") and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act"). Plaintiffs seek to certify a class of purchasers of stock in Weight Watchers International, Inc. ("WW") for the time period of May 4, 2018 to February 26, 2019. While the Consolidated Amended Complaint (Dkt. No. 74) spans 92 pages, all of Plaintiffs' claims revolve around their contention that WW failed to disclose that (i) it could not meet its profit and membership goals without recruiting lapsed members, and (ii) it supposedly intended from early in 2018 to depart from its business strategy of releasing an end-of-year "program innovation" for 2019. Plaintiffs' claims fail as a matter of law for multiple reasons including the following:

## I.    Plaintiffs Fail To Allege Any Actionable Misstatements Or Omissions

Plaintiffs fail to plead any actionable misstatements or omissions. For this reason alone, all of their claims should be dismissed. *First*, Plaintiffs' claim that WW failed to disclose the importance of re-enrolling its traditional target demographic population is belied by WW's express public disclosures. The May 2018 Prospectus Supplement, for example, states that WW's business depends on members who "repeatedly resubscribe[] to the program" and on WW's ability "to attract . . . new *and returning* customers." (Ex. A at S-1, S-4.)[1] Likewise, WW's Form 10-K for 2017, incorporated by reference into the May 2018 Prospectus Supplement, states that WW's marketing efforts are geared towards "attract[ing] new *and returning* customers." (Ex. B at 1, 5.)

*Second*, Plaintiffs plead no particularized facts supporting their conclusory contention that WW abandoned its traditional target demographic. WW is a membership-driven business. It strategically expanded its marketing to target and encourage people regardless of age, gender, or other demographic to join but it was not giving up on the middle-aged female demographic that formed its core traditional membership base. Indeed, in the February 26, 2019 earnings call that Plaintiffs cite as the corrective disclosure that "effectively revealed the truth," CEO Mindy Grossman was clear that WW had focused both on new and former members throughout 2018,

---

[1]    *See* appended table of citations. All emphasis throughout this letter is added, unless otherwise noted.

Simpson Thacher & Bartlett LLP

The Honorable William H. Pauley III          -2-                          August 28, 2019

even though it was not as successful as hoped as to the latter: "Our winter advertising did not drive consumers, *particularly our former members, to action in the way we had hoped*" but "was *very geared to both attracting new members as well as lapsed members.*" (Ex. C at 5, 12.)

*Third*, there was no "departure" from WW's year-end "program innovation" strategy. WW released year-end program innovations in December 2018 just as it had done in prior years, including new digital and meal program innovations like on-demand audio workouts customized for members on the WW app, as well "WW x Blue Apron," a program offering in-home delivery of WW-approved recipes and ingredients. (Exs. D, E.) Plaintiffs compare the scope of the 2018 innovations unfavorably to the "Freestyle" food program overhaul WW launched in December 2017. Plaintiffs ignore WW's innovation cycle, which *does not* include yearly food program overhauls. Indeed, before Freestyle, the last major food program change was in December 2015. (Ex. F.) But other prior year-end innovations were akin to those in 2018, such as an Apple Watch subscription plan in December 2016 and a personal coaching and digital 24/7 expert chat offering in December 2014. (Exs. G, H.)

*Fourth*, Plaintiffs' claims about the supposed lack of 2018 year-end innovations disregards WW's roll out of extensive program updates and innovations *during* 2018. These included (1) the "Summer of Impact" marketing campaign, WW's first-ever recruitment push during summer months, (2) an "Invite-A-Friend program," allowing members to refer new individuals to the program where both parties receive rewards, (3) additional emphasis on strategic partnerships, such as with Fresh Realm to create "WW Fresh" quick-prep meals available for purchase in grocery stores, (4) updates to "Connect," WW's exclusive social network, and (5) the launch of "Wellness Wins," a new rewards program. (Ex. I at 8-9, Ex. J.)

*Fifth*, Plaintiffs impermissibly fault Defendants for failing to predict the future. Both the PSLRA statutory safe harbor and the common law "bespeak caution" doctrine protect statements that are accompanied by meaningful cautionary statements that, as here, address the issues of which Plaintiffs complain. *See Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004). The May 2018 Registration Statement and Prospectus Supplement as well as WW's quarterly filings during the class period include meaningful cautionary statements including regarding WW's "ability to continue to develop new, innovative services and products and enhance our existing services and products or the failure of our services, products or brands to continue to appeal to the market" and the "effectiveness of our advertising and marketing programs"—including with respect to any potential WW member, either new or former. (*E.g.*, Ex. A at v-vi; Ex. K at 23.)

At bottom, Plaintiffs' claims amount, at most, to claims of "corporate mismanagement" inactionable under the securities laws. *E.g.*, *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004). Plaintiffs want to second-guess WW management strategic decisions, including decisions as to marketing and the timing and types of innovations. But "there is nothing fraudulent about a disappointing year." *In re Weight Watchers Int'l, Inc. Sec. Litig.*, No. 14-cv-1997 (LAK), 2016 WL 2757760, at *8 (S.D.N.Y. May 11, 2016) (Kaplan, J.) (dismissing securities complaint with prejudice).

## II.    Plaintiffs Fail To Plead Fraudulent Intent As Required For The 1934 Act Claims

Plaintiffs fail to plead the strong inference of scienter required for their 1934 Act claims. Scienter is a high burden; the Court must find that an inference of scienter is "at least as compelling as any opposing inference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.

Simpson Thacher & Bartlett LLP

The Honorable William H. Pauley III      -3-      August 28, 2019

308, 314, 324 (2007). Here, Plaintiffs' scienter claims defy common sense. Plaintiffs criticize WW's strategy of expanding its focus to include demographics (*e.g.*, young people and men) outside of its traditional member base. With the benefit of hindsight, Plaintiffs assert that WW should have kept its focus on middle-aged women. But Plaintiffs offer no explanation for why WW, or any of the Defendants, would have intentionally concocted an unprofitable scheme. The only plausible inference from the pleaded facts is of ***non***-fraudulent intent—*i.e.*, that WW was trying to strategically modernize to expand its membership and thereby drive higher revenues.

Plaintiffs allege that certain Defendants had "motive and opportunity" to commit fraud, citing certain stock sales in 2018. Plaintiffs plead that Artal and CFO Nicholas Hotchkin sold stock during the putative class period, but absent are any allegations that the Company's CEO or Chairman (also named Defendants) sold *any* stock. This substantially undermines any inference of scienter. *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 289–92 (S.D.N.Y. 2006). Moreover, as to Artal and Mr. Hotchkin, Plaintiffs do not allege anything unusual or suspicious. Artal was acting in the common, universal manner of a private equity company by creating liquidity for its investors; it remains the largest WW shareholder. As to Mr. Hotchkin, he sold 41% of his holdings (not 61% as Plaintiffs claim). These facts are dispositive of scienter. *Id.*

### III.    Plaintiffs Fail To Plead Loss Causation As Required For The 1934 Act Claims

The 1934 Act claims should also be dismissed because the Complaint does not plead loss causation. The Complaint alleges that the "truth" was disclosed on February 26, 2019. These disclosures were not "corrective" because they did not reveal any previously withheld information. WW revealed unexpected poor financial performance and its explanation that such performance was due to a "perfect storm" of factors—specifically, comparison to the phenomenally successful revamping of its weight-loss program known as "Freestyle," an imperfect effort to rebrand from "Weight Watchers" to "WW" to shift into overall health and wellness, and the strength of competitive "fad" diets.

### IV.    Plaintiffs Fail To Plead That Artal Luxembourg, S.A. Was A Statutory Seller

Plaintiffs' Section 12(a)(2) claim, pleaded solely as to Artal Luxembourg, S.A. must be dismissed because Artal Luxembourg, S.A. did not "offer[] or sell[] a security" directly to Plaintiffs in this firm commitment underwriting. *Pinter v. Dahl*, 486 U.S. 622, 641, 648–50 (1988). Indeed, Plaintiffs allege that they purchased WW stock *from Goldman Sachs*, one of the underwriters in the May 2018 offering. Without a direct purchase, Plaintiffs' claim fails as a matter of law. *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010).

### V.    Plaintiffs' 1933 and 1934 Act Control Person Claims Fail As A Matter of Law

Plaintiffs' Section 15 and Section 20(a) control person claims must be dismissed because Plaintiffs (a) fail to plead an underlying violation, (b) fail to plead in anything but a nominal, conclusory fashion that any of these Defendants controlled WW (Artal, for example, was a minority shareholder after the May 2018 offering (Ex. A. at S-24.)), and (c) fail to plead culpable participation with requisite particularity. *In re NQ Mobile, Inc. Sec. Litig.*, No. 13CV7608, 2015 WL 1501461, at *4 (S.D.N.Y. Mar. 27, 2015) (Pauley, J.).

For these reasons, Defendants respectfully request permission to file a motion to dismiss.

Simpson Thacher & Bartlett LLP

The Honorable William H. Pauley III                    -4-                    August 28, 2019

Respectfully submitted,

*Lynn K. Neuner*

Lynn K. Neuner
George S. Wang

cc:    All counsel (via ECF)

| | | Table of Citations |
|---|---|---|
| **Ex.** | **Date** | **Description** |
| A | May 10, 2018 | WW Prospectus Supplement Form 424B7 |
| B | Feb. 28, 2018 | WW Form 10-K |
| C | Feb. 26, 2019 | WW FQ4 2018 Earnings Call |
| D | Dec. 20, 2018 | WW Press Release, *Introducing WW x Blue Apron: Inspiring Healthier Home Cooking* |
| E | Dec. 10, 2018 | WW Press Release, *WW Launches New Digital Innovations to Inspire Healthy Habits* |
| F | Dec. 7, 2015 | WW Press Release, *Weight Watchers Introduces the Beyond the Scale Program: A Personalized Approach to Eat Healthier, Discover Fitness That Fits, and Fuel Inner Strength* |
| G | Dec. 15, 2014 | WW Press Release, *Introducing Never Before Offered Ways To Do Weight Watchers Anytime, Anywhere: New Weight Watchers Personal Coaching Offering And Revamped Digital Essentials Offering Including New 24/7 Expert Chat* |
| H | Dec. 15, 2016 | WW Press Release, *Weight Watchers Unveils New Apple Watch Subscription Plan* |
| I | May 2, 2019 | WW FQ1 2019 Earnings Call |
| J | Oct. 4, 2018 | WW Press Release, *WW Launches WellnessWins Member Rewards Program to Inspire Healthy Habits* |
| K | Aug. 7, 2018 | WW Form 10-Q |